J-S42040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ASHLEY CIERRA COLE :
:
Appellant : No. 160 EDA 2019

Appeal from the Judgment of Sentence Entered December 11, 2018
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006153-2014

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED NOVEMBER 30, 2020**

Ashley Cierra Cole ("Cole") appeals from the judgment of sentence imposed following the revocation of her probation. We affirm.

On January 23, 2015, Cole entered a negotiated guilty plea to one count of retail theft.[1] On the same day, the trial court imposed a sentence of time served to 23 months, plus two years of probation.

On April 11, 2016, the Montgomery County Adult Probation and Parole Department ("County Probation") issued a Notice charging Cole with violating

---

[1] 18 Pa.C.S.A. § 3929(a)(1). Based on Cole's previous convictions for retail theft, the offense was graded as a third-degree felony. ***Id.*** § 3929(b)(1)(iv).

the conditions of her parole. Cole stipulated to the violation at a **Gagnon II**[2] hearing. The revocation court revoked Cole's parole, and sentenced Cole to serve the balance of her original sentence, including the two years of consecutive probation following the expiration of her parole.

Cole was re-paroled on July 11, 2016. On August 3, 2018, while Cole was on probation, she was arrested for retail theft, after a store employee observed Cole and another individual attempting to leave the store with stolen merchandise. County Probation issued a Notice, on August 14, 2018, charging Cole with violating the conditions of her probation based on the arrest, and for a failure to pay amounts due on her fines, costs, and restitution. Cole waived her rights to a **Gagnon I** hearing.

Cole proceeded to a **Gagnon II** hearing on December 11, 2018. Prior to the hearing, the Commonwealth informed the revocation court that Cole had pled guilty to the charges arising from the August 2018 arrest, and provided Cole and the court with a copy of a report generated by the Pennsylvania Justice Network ("JNET"). The JNET report indicated that Cole's name was listed as an alias for "Quaasia Barnwell."[3] At the hearing, Cole provided a statement, wherein she admitted that she was in violation of her

---

[2] **See Gagnon v. Scarpelli**, 411 U.S. 778 (1973). Cole waived her rights to a hearing pursuant to **Gagnon I**.

[3] According to the Revocation Court Opinion, Cole's counsel notified the revocation court, shortly after the hearing, that their research indicated that the JNET report was inaccurate. Revocation Court Opinion, 1/16/20, at 7.

probation and requested that she be provided with mental health treatment. However, Cole denied committing the crimes for which she had pled guilty, and denied using an alias. The Commonwealth, in conjunction with County Probation, requested that the trial court impose a sentence of 8 to 23½ months in jail, plus one year of consecutive probation. The Commonwealth also referenced the contents of the JNET report, at which time the revocation court asked the Commonwealth to provide a copy of the JNET report to the court and to Cole. The revocation court then revoked Cole's probation, and imposed a sentence of 7 to 23 months in prison, followed by one year of probation.

Cole filed a post-sentence Motion, requesting that the revocation court modify her sentence. Before the revocation court ruled on Cole's post-sentence Motion, Cole filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.[4, 5]

Cole raises the following issue for our review: "Did the revocation court err in considering[,] in a **Gagnon II** sentencing determination[,] late-produced evidence that was not provided to defense counsel?" Brief for Appellant at 2.

---

[4] The docket reflects that Cole was granted parole on January 10, 2019, the same day that Cole filed her timely Notice of Appeal.

[5] We note that the Revocation Court Opinion is dated January 16, 2020, while the docket lists the date as January 16, 2019.

- 3 -

Cole argues that the revocation court erred in considering the contents of the JNET report when determining Cole's sentence. *Id.* at 9. Specifically, Cole claims that the Commonwealth brought the JNET report to the attention of Cole and the revocation court in an off-the-record meeting just before the *Gagnon II* hearing and, thus, deprived Cole of the opportunity to defend herself from the contents of the JNET report. *Id.* at 9-10. Cole concedes that the JNET report was not introduced into evidence at the JNET hearing, and Cole's counsel did not object to the revocation court's instruction for the Commonwealth to provide the court and Cole with a copy of the report at the conclusion of the hearing. *Id.* at 10-11. Nevertheless, Cole claims that the revocation court improperly allowed the JNET report to color its sentencing. *Id.* Further, Cole claims that the contents of the report itself were proven to be inaccurate after the *Gagnon II* hearing, and the Commonwealth's failure to correct the record constituted error. *Id.* at 11-12.[6]

"[I]n an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the

_____

[6] To the extent that Cole argues that the revocation court considered the JNET report as an improper sentencing factor, such claim is waived because it is wholly undeveloped in Cole's brief, and her brief does not include a separate Pa.R.A.P. 2119(f) statement. *See Commonwealth v. Moury*, 992 A.2d 162, 169-70 (Pa. Super. 2010) (stating that, prior to reviewing the merits of a challenge to the discretionary aspects of sentence, it is mandatory for an appellant to attach a separate concise statement pursuant to Rule 2119(f)); *Commonwealth v. Wise*, 171 A.3d 784, 791 (Pa. Super. 2017) (finding an issue waived where the appellant failed to develop any argument or cite to controlling case law).

legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." ***Commonwealth v. Wright***, 116 A.3d 133, 136 (Pa. Super. 2015) (quoting ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1033 (Pa. Super. 2013) (*en banc*)). "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." ***Commonwealth v. McNeal***, 120 A.3d 313, 322 (Pa. Super. 2015) (citations and quotation marks omitted).

In reviewing the revocation of probation, we are cognizant that

[t]he ***Gagnon II*** hearing entails, or may entail, two decisions: first, a "consideration of whether the facts determined warrant revocation." ***Morrissey v. Brewer***, [408 U.S. 471,] 488 [1972]. "The first step in a ***Gagnon II*** revocation decision ... involves a wholly retrospective factual question: whether the parolee [or probationer] has in fact acted in violation of one or more conditions of his parole [or probation]." ***Gagnon*** …, 411 U.S. at 784 …. It is this fact that must be demonstrated by evidence containing "probative value." ***Commonwealth v. Kates***, … 305 A.2d [701,] 710 [(Pa. 1973)]. "Only if it is determined that the parolee [or probationer] did violate the conditions does the second question arise: should the parolee [or probationer] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" ***Gagnon*** …, 411 U.S. at 784 …. Thus, the ***Gagnon II*** hearing is more complete than the ***Gagnon I*** hearing in affording the probationer additional due process safeguards, specifically:

(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral

- 5 -

and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

*Gagnon* … , 411 U.S. at 786 ….

***Commonwealth v. Davis***, 336 A.2d 616, 621 (Pa. Super. 1975) (some citations omitted).

Here, at the ***Gagnon II*** hearing, Cole stipulated to being in violation of her probation by virtue of her pleading guilty to a subsequent criminal offense. N.T., 12/11/18, at 5-6 (wherein Cole testified that she received the Notice of violation from County Probation, and admitted that she was in violation of her probation because of the new arrest and failure to pay court costs). Significantly, the evidence contested by Cole—the JNET report—was not admitted into evidence at the hearing. ***See*** N.T., 12/11/18, at 19 (wherein the revocation court instructed the Commonwealth to provide a copy of the report to the revocation court and Cole's counsel after the hearing concluded). Additionally, the revocation court specifically stated in its Opinion that it "did not consider the JNET [report] presented just prior to the hearing by the Commonwealth[,] or the possibility of another alias in formulating [Cole]'s sentence." Revocation Court Opinion, 1/16/20, at 12.

Cole also points to the revocation court's reference to Cole's "history … of making other identifications of herself" as an indication that the revocation court improperly considered the JNET report when imposing its sentence.

Brief for Appellant at 10-11. The **Gagnon II** hearing transcript reveals the following statement by the revocation court:

> Significantly, in rendering my decision in this case, [Cole]'s criminal history includes a total of 14 arrests in the Commonwealth of Pennsylvania. She has incurred ten arrests for retail theft, two assault-related arrests, one arrest for possession of a controlled substance, and one arrest for false identification to law enforcement. **So she has a history somewhat of making other identifications of herself**, which we frequently see in retail theft cases to avoid further prosecution after being convicted of retail thefts under a real name."

N.T., 12/11/18, at 22-23 (emphasis added). However, the record does not disclose any evidence that the revocation court was referring to the JNET report in its reference to Cole's prior instances of providing false identification, rather than to Cole's history of being arrested for providing false identification to law enforcement. **See id.** Accordingly, we conclude that the revocation court did not abuse its discretion or deprive Cole of her due process rights under **Gagnon**, and Cole is not entitled to relief on her sole claim. **See Ferguson**, **supra**.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/30/2020*

- 7 -